CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JUN 19 2015

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| PAUL A. LOVINGS,<br>    Plaintiff, | Civil Action No. 7:14-cv-00359 |
| v. | **MEMORANDUM OPINION** |
| RANDALL C. MATHENA, et al.,<br>    Defendants. | By:   Hon. Jackson L. Kiser<br>        Senior United States District Judge |

Paul A. Lovings, a Virginia inmate proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. Plaintiff names fourteen staff of the Red Onion State Prison ("ROSP") as defendants. Defendants filed a motion for summary judgment, and Plaintiff responded, making the matter ripe for disposition. After reviewing the record, I grant Defendants' motion for summary judgment.

I.

Plaintiff's claims are about the process leading to and the conditions of confinement during his approximately twenty-four hour stay in five-point restraints in a segregation cell. Plaintiff has myriad complaints about defendants' involvement with these claims. Generally, Plaintiff complains that he was sprayed with mace for disagreeing with correctional officers, was moved to segregation on false charges, had to breathe air that smelled like urine or feces, was strapped onto a dirty bunk in a dirty, cold cell, and had no water access in the segregation cell. Plaintiff also complains that defendants kept him in five-point restraints that were strapped too tightly, ignored his requests to verify that the restraints were too tight, would not give Plaintiff a blanket or flush the toilet, gave Plaintiff too few pieces of toilet paper, coerced Plaintiff to forego a medical examination in order to be release from the five-point restraints, and did not return all of Plaintiff's personal property or give him more clothes or a shower upon his release from five-

point restraints. Plaintiff complains that the defendant Warden did not adequately supervise staff and failed to ensure that Plaintiff received an Institutional Classification ("ICA") Report within five days of its issuance.[1] Plaintiff argues that he has a right to a formal due process hearing with rights to notice, call witnesses, forty-eight hours' notice, and attend the hearing before being moved from general population to segregation and before being placed in five-point restraints. Plaintiff also complains that Defendants did not follow VDOC policies and procedures.

## II.

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); see Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (recognizing a party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant). "Material facts" are those facts necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the

---

[1] As I noted in Bryant v. Johnson, No. 7:11-cv-00075, 2012 U.S. Dist. LEXIS 118173, at *5 n.3, 2012 WL 4458214, at *1 n.3 (W.D. Va. Aug. 21, 2012):
> An ICA hearing is conducted whenever an inmate is scheduled for an annual review, formal due process hearing, or an informal hearing, depending on the hearing's purpose . . . . The ICA hearing officer completes a "Class Level Evaluation Sheet," which uses a point system to evaluate the inmate. The factors considered during the ICA [*2] hearing review are security levels, institutional assignments, program participation, work classification, job assignments, institutional infractions, and any other decisions affecting the inmate . . . . The total number of earned points determines an inmate's security level.

2

movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine dispute of fact for trial. Id. at 322-23. A court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995); Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Instead, a court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the non-moving party's favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).

### III.

Defendants argue that Plaintiff failed to exhaust available administrative remedies for all claims except his allegation that he did not receive advanced notification of the ICA hearing. After reviewing the record, I find that Defendants sufficiently establish that that Plaintiff failed to exhaust all claims except about notice of the ICA hearing.

The exhaustion requirement is mandatory and "applies to all inmate suits about prison life[.]" Porter v. Nussle, 534 U.S. 516, 524, 532 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90 (2006). When a prison provides an administrative grievance procedure, the inmate must file a grievance raising a particular claim and pursue it through all available levels of appeal to "properly exhaust." Id.; Dixon v. Page, 291 F.3d 485, 490-91 (7th Cir. 2002). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). "[W]hen prison officials prevent inmates from using the administrative process . . ., the process that exists on paper becomes unavailable in reality." Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). A defendant has the burden to prove an inmate's failure to

3

exhaust available administrative remedies. Jones v. Bock, 549 U.S. 199, 216 (2007). Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the plaintiff to show, by a preponderance of the evidence, that, inter alia, exhaustion occurred. See, e.g., Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011).

VDOC Department Operating Procedure ("OP") 866.1, "Offender Grievance Procedure," provides the administrative remedies for inmates to resolve complaints, appeal administrative decisions, and challenge policies and procedures. The process provides correctional administrators means to identify potential problems and, if necessary, correct those problems in a timely manner. All issues are grievable except issues about policies, procedures, and decisions of the Virginia Parole Board; disciplinary hearing penalties and/or procedural errors; state and federal court decisions, laws, and regulations; and other matters beyond the VDOC's control. Inmates are oriented to the inmate grievance procedure when they enter the VDOC's custody and when they are transferred to other VDOC facilities. Prior to submitting a grievance, the inmate must make a good-faith effort to informally resolve the issue by submitting an Informal Complaint form, which is available in housing units. If the issue is not informally resolved, the inmate must file a regular grievance within thirty calendar days from the date of the occurrence or incident, and only one issue per regular grievance may be addressed.

The events Plaintiff has described in the complaint are grievable issues, but Plaintiff did not pursue administrative remedies. Although he offers his bare assertion that he did exhaust administrative remedies in response to Defendants' evidence, Plaintiff statements are insufficient to preclude summary judgment.[2] Accordingly, Defendants are entitled to summary judgment for

---

[2] The grievance records attached to the complaint relate to the claim that Defendants concede had been exhausted.

4

all claims except about notice before the ICA hearing due to Plaintiff's failure to exhaust available administrative remedies.

IV.

Plaintiff's exhausted claim is that Defendants should be liable because they did not provide him with proper advance notification of his ICA hearing that occurred after his release from five-point restraints, as required by VDOC policies. A state official's failure to abide by procedural rules and regulations does not, in and of itself, state a federal due process issue. Riccio v. Cnty. of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990). Rather, in order to prevail on a procedural due process claim, an inmate "must first demonstrate that [he was] deprived of 'life, liberty, or property' by governmental action," Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997), and an inmate's liberty interest is only implicated by a deprivation that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," Sandin v. Conner, 515 U.S. 472, 484 (1995). See also Wolff v. McDonnell, 418 U.S. 539, 563-64 (1974) (finding that an inmate is entitled to procedural protections only when the loss of statutory good time credits or some other liberty interest is at issue).

The ICA hearing, however, did not implicate any constitutionally-cognizable liberty interest: it was held solely to determine whether Plaintiff should be held in segregation prior to the disposition of the institutional charge for allegedly trying to break the sprinkler head in the cell. Plaintiff does not have a protected liberty interest from being moved from general population to segregation. Absent a loss of statutory good time credits or the imposition of an atypical and significant hardship, a simple change in institutional status does not trigger the right to federal due process. See Beverati, 120 F.3d at 504 (holding that, because the inmates possessed no liberty interest in avoiding confinement in administrative segregation, the district

5

court properly granted summary judgment in favor of prison officials on inmates' procedural and substantive due process claims). Thus, even if Plaintiff did not receive proper notification of his ICA hearing to determine whether Plaintiff should be housed in segregation, he cannot state a violation of due process actionable via § 1983. Accordingly, Defendants are entitled to summary judgment for this claim.

## V.

For the foregoing reasons, I grant Defendants' motion for a protective order as Defendants are entitled to qualified immunity, deny Plaintiff's motion to compel, and grant Defendants' motions for summary judgment.

**ENTER**: This 19th day of June, 2015.

Senior United States District Judge